## Churchill v. Prudential Insurance Company of America

*John W. Bour*, for plaintiff.
*Welles, Mackie & Law*, for defendant.

ROBINSON, J., May 14, 1948.—Plaintiff, declaring upon a life insurance policy for accidental death benefits, alleges "that the insured on August 20, 1947, between the hours of 7:30 and 8 a.m., while attempting to open the door of a garage located in the rear of 930 Corbett Avenue, Scranton, Pa., accidentally tripped, stumbled and fell and, with great force and violence, struck his head against the rear of a motor vehicle in said garage and the door thereof and as a result sustained severe bruises and contusions and lacerations in and about the region of his face and head and was rendered unconscious and while unconscious he breathed in carbon monoxide gas or fumes from the motor of said vehicle which gas or fumes resulted in his death on said date".

The policy in suit contained a provision excepting liability for an accidental death resulting "from the inhaling of any kind of gas, whether voluntarily or otherwise".

The face amount of the policy was paid.

Defendant filed preliminary objections in the nature of a demurrer claiming the benefit of the exception in the policy and praying that the action be dismissed.

The case turns in part upon the meaning to be given the words "inhaling" modified by "voluntarily or otherwise" as used in the exception to the accidental death benefit in the policy.

Historically, the law on the subject seems to start with the case of Paul v. Travelers' Insurance Co., 112 N. Y. 472, 20 N. E. 347, where, the insured being asphyxiated while asleep, recovery was allowed despite an exception in the policy precluding liability for accidental death caused "by inhaling gas". The court there held that "inhaling of gas can only be understood to mean a voluntary and intelligent act of the insured, and not an involuntary and unconscious act".

This decision was followed by our Supreme Court in H. W. Pickett v. Pacific M. L. Ins. Co., 144 Pa., 79,

allowing recovery for accidental death where insured working in a shallow well in the presence of gas he had no knowledge of, was asphyxiated. The court held that "inhalation" as applied to gas resulting in death meant under the terms of the policy a voluntary, intelligent and conscious act.

It will serve no purpose here to review all of the authorities on the subject; they have been collected and analyzed in two cases from other jurisdictions, Levinson v. Reliance Life Insurance Co. (Maryland), 41 A. (2d) 485, and Safe Deposit and Trust Co. v. New York Life Ins. Co., 14 F. Supp. 721.

It is sufficient to say that under well-settled law the word "inhale" standing by itself in an exception to the accidental death benefit clause in a life insurance policy means a voluntary, conscious and intelligent act.

We are not prepared to say, however, that the meaning given the word "inhale" by the ruling in Pickett v. Insurance Co., supra, cannot be varied by other language used by the parties.

The argument of plaintiff as to this is set forth as follows: "Here the policy in suit differs from the policy in the Pickett case, supra, in that it contains the additional words, 'voluntarily or otherwise'. However, these words modify the word 'inhaling'. Modifying words cannot increase the meaning of the word they modify. If in fact the insured did not inhale the gas, the words 'voluntarily or otherwise' can be of no aid to defendant".

We cannot accept the contention as law. We know of no authority to the effect that an appellate court may fix the meaning of a word in a contract of insurance and forbid posterity the use of other language to change its sense. Further, the process of judicial interpretation to which the word "inhale" was subject in the Pickett case narrowed and restricted the meaning as ordinarily and commonly understood.

"Looking alone to the etymology of the word 'inhale', and to its ordinary dictionary definition, it means to

draw in, as air into the lungs, and to inspire, as to inhale air—a process of life that goes on whether sleeping or waking; and in such sense it may be said that a person, when sleeping, breathes the air without any volition or intelligent action": 21 Words and Phrases 359.

The words "inhale" and "breathe in" though of different derivation, one Latin, the other Anglo-Saxon, mean in their plain and accepted sense, the drawing into the lungs of a gaseous substance.

The meaning of a word will vary with time and the circumstances under which it is used. We have long since left the era when the word "inhale", in the mind of an appellate judge, was only associated with gaseous anesthetics.

The only possible ambiguity in the word "inhale" was that synthesized in the construction given it by the courts: Urian v. Scranton Life Ins. Co., 310 Pa. 144.

The language of an insurance policy is to be read and construed in its plain ordinary sense: Lyford v. New England Mutual Life Insurance of Boston, 122 Pa. Superior Ct. 16; Urian v. Scranton Life Ins. Co., supra; Foundation and Construction Co. v. Franklin Trust Co. et al., 307 Pa. 10; Skelly, appellant, v. Fidelity and Casualty Company of New York, 313 Pa. 202.

Therefore, we hold that the addition of the words "voluntary or otherwise" to the exception where death is caused by inhaling gas, restored the plain ordinary meaning of the term and was intended by the parties to include events like those leading up to the death described in this suit. In so holding we are not without supporting authority: Safe Deposit & Trust Co. v. New York Life Ins. Co., 14 F. Supp. 721; King v. New York Life Ins. Co., 72 F. (2d) 620; McHugh v. New England Mutual Ins. Co., 317 Mass. 498, 58 N. E. (2d) 843; Vaughan v. Gulf Life Ins. Co., 64 Ga. A. 590, 13 S. E. (2d) 715; Diamond v. New York Life Ins. Co.,

286 N. Y. Supp. 625; Levinson v. Reliance Life Ins. Co., 41 A. (2d) 485.

Plaintiff urges liability under the terms of the policy even if there is "inhalation of gas voluntarily or otherwise", as we so hold, on the theory that two accidents are alleged in the complaint, and that the accidental fall and resulting unconsciousness was the proximate cause of the insured's demise.

It would be novel, indeed, to hold that a provision in the exception clause to a double indemnity policy, is effective or ineffective, depending upon the kind of accident from which the death excepted results: Westbrook, appellant, v. Continental Life Insurance Company, 111 Pa. Superior Ct. 563; Urian v. Scranton Life Ins. Co., 310 Pa. 144. Neither are we satisfied that the fall of plaintiff was the proximate cause of the death by asphyxiation. The proximate cause of the death, as we view it, was the conduct of the deceased in the presence of gases from an automobile motor in a closed garage. It was this conduct that set in motion the chain of events leading to insured's death.

In McIntyre v. The Equitable Life Assurance Society of the United States, appellant, 324 Pa. 417, the distinction was pointed out in this manner:

"The cases relied upon by appellee, in which the accidental injury caused or brought about directly a disease or infection resulting in death or disability, are distinguishable from the instant case. In these cases the injury definitely started the chain of events resulting in death or disability, and can be said to be the sole and independent cause thereof: Farner v. Mass. Mut. Accident Assn., 219 Pa. 71; Dale v. Standard Accident Ins. Co., 307 Pa. 398; Neely v. Provident Life and Accident Ins. Co., 322 Pa. 417. From the testimony here it definitely appears that the bruises and over-exertion insured received while in jail did not cause the disease from which he died. Nor was it established by the testimony that such bruises or in-

juries were of such a nature as to cause his death solely and independently of the disease. The only finding which the testimony in this case will support is that the injuries were but a contributing cause of insured's death, and this, as we have pointed out, is not enough to make defendant liable for double indemnity under the terms of the policy."

We have examined the pleadings to determine whether amendment will aid plaintiff in light of the rule stated in Adler, admr., appellant, v. Helsel, 344 Pa. 386, where it was said at page 389:

"The question before the court was not solely whether, under the facts as stated, plaintiff could recover, but whether the claim as stated excluded the possibility of recovery under a better statement of facts: Winters v. Pennsylvania R. R. Co., 304 Pa. 243, 247, 155 A. 486, 487; Greene County v. Center Township, 305 Pa. 79, 86, 157 A. 777, 778; Garnack v. McNally, 315 Pa. 30, 32, 172 A. 102, 103; Stevens v. Doylestown Building & Loan Association, 321 Pa. 173, 183 A. 922; Seitz, Trustee, v. Fulton National Bank, 325 Pa. 14, 16, 188 A. 569, 570; United Societies of Greek Catholic Religion v. Klochak, 340 Pa. 159, 161, 16 A. 2d 373."

It would seem that the possibility of recovery by plaintiff is excluded under a better statement of facts, especially the factual background of the insured's actions immediately prior to the fall and the resulting unconsciousness. While not pointed out by counsel on either side, we cannot set aside the impression that before the mishap causing the loss of consciousness, the deceased, within the confines of a closed garage, then being charged with the poisonous fumes of a motor exhaust, with knowledge thereof, consciously, voluntarily and intelligently drew in his lungs the gaseous substance, even under the restricted and narrow meaning of the word "inhale".

Further, it is common knowledge that one present in a closed space into which is being discharged the

exhaust of an internal combustion engine, subjects himself to a highly dangerous and hazardous condition of which death is a likely and probable result. Such state of facts might well be analogous to that, where because of reckless conduct by the insured, recovery was denied in Kinavey, admrx., appellant, v. Prudential Insurance Company, 149 Pa. Superior Ct. 568.

To avoid such pitfalls the pleader has already exhibited skill and ingenuity.

Now, May 14, 1948, the preliminary objections to the complaint are sustained and judgment is here entered for defendant.